# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2407

_____

Regina McDowell; SF Doe, through her next friend, Katherine Jones

*Plaintiffs - Appellants*

v.

Donald Blankenship, individually and in his official capacity as sheriff of Phelps County, Missouri

*Defendant*

Aaron Pinson, individually and in his official capacity; Michael Manley, individually and in his official capacity; Mark Wynn, individually and in his official capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 10, 2014
Filed: July 16, 2014

_____

Before RILEY, Chief Judge, BYE and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

This appeal arises from an excessive-force claim[1] against Phelps County (Missouri) Sheriff's Department Deputies Aaron Pinson, Michael Manley, and Mark Wynn (collectively, deputies). Following an unfortunate death during a traffic stop, the decedent's mother, Regina McDowell, and daughter, through her next friend Katherine Jones (collectively, relatives), unsuccessfully tried their excessive-force claim before a jury. They now appeal, arguing the district court[2] erred in admitting Deputy Wynn's deposition testimony when Deputy Wynn was unexpectedly absent from trial. Exercising our appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND
### A.    Factual Background

After seeing Jimmy Farris run a red light, two Phelps County deputies—Deputies Pinson and Manley—conducted a traffic stop. Deputy Pinson, having dealt with Farris in the past, radioed Deputy Wynn to bring his drug-detecting dog and conduct a dog sniff of Farris's pickup truck. Deputy Pinson asked Farris to empty his pockets, but Farris refused. Soon after, Deputy Wynn arrived and conducted a canine search. The dog alerted, but the resulting search was unfruitful. As Deputy Pinson entered his patrol car to write Farris a summons for his traffic violation, he saw Farris had begun emptying his pockets at Deputy Wynn's request. Moments later, a struggle erupted between Deputy Wynn and Farris.

Deputy Pinson did not see the struggle begin, but three Taco Bell restaurant employees were nearby and witnessed at least part of the encounter. Veronica Lee

---

[1]Although several claims were made under 42 U.S.C. §§ 1983 and 1988 against the deputies and Sheriff Donald Blankenship, they were all resolved on motion for summary judgment. The excessive-force claim against the deputies was the only claim remaining at trial and is the only one at issue on appeal.

[2]The Honorable Stephen N. Limbaugh Jr., United States District Judge for the Eastern District of Missouri.

testified that shortly after the incident, she told the investigating Missouri Highway Patrol officer that Farris "started emptying his pockets but only select things." She explained that Farris said his pockets were empty, but turned one pocket away from Deputy Wynn. The investigating officer reported that Lee initially stated Farris "raised his elbow to hit [Deputy Wynn]," at which point Deputy Wynn and another deputy took Farris down. At trial, however, Lee said Farris simply reached for his pocket, raising his elbow. The other two employees, Samantha Rall and Brandy Deluca, testified they saw Farris emptying his pockets, but were looking away the moment the struggle began. Deluca did recall hearing Deputy Wynn tell the other deputies that Farris was attacking him.

According to Deputy Wynn's deposition testimony—the testimony at issue here—the struggle occurred as follows: Deputy Wynn told Farris he believed Farris had narcotics on him and asked Farris to empty his pockets. Farris initially sized up Deputy Wynn as if to fight or flee and turned his right side away from Deputy Wynn, then began emptying his left pocket. Meanwhile, Deputy Wynn noticed a pocket knife in Farris's right pocket and asked Farris to stop and place both hands on the truck. Deputy Wynn removed the knife and then noticed a ball of what felt like pills. As Deputy Wynn reached into the pocket and began removing the pills, Farris "made a fist" "[w]ith his right hand," "dropped his shoulder and went to try to hit [Deputy Wynn]." As Farris started to "swing at" him, Deputy Wynn "grabbed [Farris's] right hand and forced him to the ground."

The deputies together pinned Farris to the ground. When Farris struggled, one deputy pepper sprayed him. Shortly after Farris was handcuffed, he vomited and became unresponsive. Despite resuscitation efforts, Farris ultimately died. An autopsy showed Farris died from "[h]ypertensive heart disease exacerbated by methamphetamine during exertion and physical altercation."

**B.      Procedural Background**

Farris's relatives filed a 42 U.S.C. § 1983 action against the deputies in the Eastern District of Missouri.  At the beginning of trial on March 25, 2013, defense counsel informed the relatives' counsel for the first time that Deputy Wynn would not be present for trial.  Defense counsel explained Deputy Wynn was in Afghanistan training dogs for the United States Army and, until a few days prior, defense counsel expected Deputy Wynn to be present.  Expressing a desire to proceed with trial, the relatives declined the district court's invitation to continue the trial date, but requested "the Court's indulgence to permit [the relatives] to review [Deputy Wynn's] deposition and designate" sections to be read at trial.  The district court agreed.

Rather than designating sections to read in presenting their case, the relatives, two days later, objected to the deputies' use of the deposition testimony in defense. The relatives expressly declined to dispute (and later relied on) defense counsel's representation that Deputy Wynn was abroad as a civilian contractor for the Army, but argued the deposition was inadmissible under Federal Rule of Civil Procedure 32(a)(4)(B), because Deputy Wynn's absence was self-procured through his choice of employment.  The district court overruled the objection, reasoning the deposition was admissible under a different subsection, Rule 32(a)(4)(E), because "exceptional circumstances" were present.  Given this ruling, the relatives counter-designated their own sections of Deputy Wynn's deposition testimony to be read to the jury.

During closing arguments, the relatives drew attention to Deputy Wynn's absence, explaining he was the only witness to testify Farris "acted violently or even uncooperatively until an act of violence . . . was leveled on him" and that Deputy Wynn "has never been in this courtroom for [the jury] to see or hear him."  The relatives emphasized Deputy Wynn, having neither "the time" nor the "concern" to be present, chose to be absent and thereby deprived the jury of "the benefit to hear or see or understand from him . . . whether [his story] was true or not."

After the jury found in the deputies' favor, the relatives moved for a new trial in light of the admitted deposition transcript. The district court denied the motion, again finding "exceptional circumstances" justified admitting the deposition testimony. The relatives appeal this denial, claiming the district court erred in (1) admitting Deputy Wynn's deposition testimony, and (2) denying a new trial.

## II.  DISCUSSION

We reverse the denial of a motion for a new trial only where the district court abused its discretion. See Sayger v. Riceland Foods, Inc., 735 F.3d 1025, 1034 (8th Cir. 2013). Like most evidentiary rulings, see, e.g., McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 746 (8th Cir. 2010), "[t]he decision to admit deposition testimony will not be reversed absent a clear showing the trial court abused its discretion," Nationwide Mut. Fire Ins. Co. v. Dunkin, 850 F.2d 441, 443 (8th Cir. 1988) (per curiam).

### A.  Admissibility Under Rule 32(a)(4)(E)

Rule 32(a)(4) permits a party to use "the deposition of a witness, whether or not a party, if the court finds . . . (E) on motion and notice,[3] that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." The relatives argue the district court clearly abused its discretion in admitting the deposition testimony because Deputy Wynn's absence was due to his own choice of overseas employment and because his testimony and credibility were crucial to the case.

We have not yet considered the rule's "exceptional circumstances" language, but the phrase unquestionably grants the district court considerable discretion in

---

[3]The relatives do not here argue insufficient notice or the absence of a motion, nor did they before the district court.

determining whether to admit deposition testimony. See Allgeier v. United States, 909 F.2d 869, 876 (6th Cir. 1990); see also Garcia-Martinez v. City & Cnty. of Denver, 392 F.3d 1187, 1191-92 (10th Cir. 2004). Looking for interpretive guidance in the other subsections of what is now Rule 32(a)(4),[4] some of our sister circuits have held the circumstances of a witness's absence are exceptional when akin to the witness being "unavailable or unable to testify because he is dead; at a great distance; aged, ill, infirm, or imprisoned; or unprocurable through a subpoena." Allgeier, 909 F.2d at 876; accord Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 963 (10th Cir. 1993). We agree Rule 32(a)(4)(E) permits deposition testimony where, in the district court's judgment, live testimony from the deponent is impossible or highly impracticable and "the interest[s] of justice," "with due regard to the importance of live testimony in open court," counsel in favor of admissibility. Cf. Griman v. Makousky, 76 F.3d 151, 153 (7th Cir. 1996) (recognizing the need to look to both the prejudice involved in admitting or excluding the evidence as well as "the nature of the circumstances that have made the deponent unavailable to testify"); Angelo, 11 F.3d at 963-64 (concluding the "exceptional circumstances" must be "a reason the deponent cannot appear," "not merely serious prejudice that" might result from excluding deposition testimony).

The district court here found live testimony was highly impracticable because Deputy "Wynn's employment in Afghanistan effectively precluded him from appearing at trial without extraordinary effort and cost and other hardship." The district court addressed the relatives' concern that Deputy Wynn procured his own absence by explaining that even if his absence were traceable to his choice of employment, it was "apparent . . . that he was not trying to procure his own absence

---

[4]The other subsections permit use of a deposition where "the witness is dead"; "the witness is more than 100 miles" away and the witness's absence was not "procured by" the offering party; "the witness cannot attend or testify because of age, illness, infirmity, or imprisonment"; or "the party offering the deposition could not procure the witness's attendance by subpoena." Fed. R. Civ. P. 32(a)(4)(A)-(D).

out of any motive to avoid the consequences of the lawsuit" because he had recently returned to the United States for a deposition in another case in which he was a defendant.

The district court balanced the equities at play, recognizing Deputy Wynn's absence did not benefit his case, but instead gave him and his co-defendants "a distinct disadvantage because his live testimony most likely would have bolstered his side of the case even more than his deposition and [the relatives'] counsel was allowed to call attention in closing argument to [Deputy Wynn's] 'voluntary' absence from trial as if he was indeed trying to avoid the matter." Finally, procedural mechanisms minimized any prejudice to the relatives. The relatives were represented and their counsel took Deputy Wynn's deposition as lead interrogator and questioned Deputy Wynn extensively during that deposition. Cf. Huff v. Marine Tank Testing Corp., 631 F.2d 1140, 1143 (4th Cir. 1980) (noting both parties were represented during their depositions and "had a full opportunity for cross-examination"). The relatives also declined the district court's offer of a continuance and counter-designated their own portions of the deposition transcript that were read to the jury.

While live witness testimony is axiomatically preferred to depositions, particularly where credibility is a central issue, see Garcia-Martinez, 392 F.3d at 1191, Rule 32(a)(4) balances that preference against the practical need for *some* testimony in situations where live testimony is impracticable. The district court did not clearly abuse its discretion, see Dunkin, 850 F.2d at 443, in weighing "the interest[s] of justice . . . with due regard to the importance of live testimony," Fed. R. Civ. P. 32(a)(4)(E), and concluding the circumstances here tip the balance in favor of admitting the deposition testimony.

**B.    Prejudice**

Even were we to conclude the district court abused its discretion in admitting Deputy Wynn's deposition testimony, this error would be "harmless in the context of

-7-

the whole trial." Batiste-Davis v. Lincare, Inc., 526 F.3d 377, 381 (8th Cir. 2008). "To be harmless error, the admitted evidence must not have had a substantial influence on the verdict." Id.

The relatives claim admission of the deposition testimony prejudiced their case because the testimony spoke to what they claim was a vital issue: who initiated the struggle. But on this particular point, Deputy Wynn's testimony was generally cumulative of what the Taco Bell employees observed and reported at the time. See Winter v. Novartis Pharm. Corp., 739 F.3d 405, 411 (8th Cir. 2014) (noting improper admission of evidence is often harmless where a "reasonable jury" could infer from existing testimony the same conclusions indicated by the erroneously admitted evidence).

Given the chance to continue the trial date—either to adjust trial strategy or make arrangements for Deputy Wynn's appearance in court—the relatives declined, choosing to proceed without him. The relatives now complain Deputy Wynn's deposition reading was a poor substitute for live testimony. When asked at oral argument how the form of Deputy Wynn's testimony negatively affected their case, the relatives explained that it limited the jury's credibility determinations. In their brief and at oral argument, the relatives emphasize the limitations in assessing credibility from a deposition transcript, but they do not explain how this fact alone worked to the relatives' disadvantage. The relatives admitted the content of Deputy Wynn's trial testimony would likely be the same as his deposition and that they had no evidence or critical question to use on cross-examination to undermine Deputy Wynn's credibility nor any particularized reason his demeanor should diminish his credibility. The portions of deposition transcript read into the record were the responses Deputy Wynn gave to questions by *the relatives' own counsel*, who questioned Deputy Wynn extensively during the deposition, covering over 150 pages of transcript.

The district court found that rather than harming the relatives' case, Deputy Wynn's absence left the deputies at "a distinct disadvantage." While the relatives had three live, disinterested witnesses in the Taco Bell employees, Deputy Wynn's absence left the defense with an empty chair and a cold transcript. During summation to the jury, the relatives emphasized this point, arguing Deputy Wynn denied the jury the chance to assess his credibility and casting Deputy Wynn's absence as indifference toward the case. Under the circumstances and "in the context of the whole trial," the admission of Deputy Wynn's deposition testimony did not have "a substantial influence on the verdict" adverse to the relatives. Batiste-Davis, 526 F.3d at 381.

## III.  CONCLUSION
We affirm.

_____