# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1806

_____

Henry M. Davis

*Plaintiff - Appellant*

v.

Michael White, in his individual capacity; City of Ferguson, Missouri; John Beaird; Kim Tihen

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 11, 2017
Filed: June 9, 2017

_____

Before RILEY, Chief Judge[1], LOKEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

---

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Henry M. Davis sued the City of Ferguson and three police officers, alleging they beat him while he was handcuffed. *See **Davis v. White***, 794 F.3d 1008 (8th Cir. 2015). His claims were tried to a jury after the district court[2] denied his *Batson* challenge to the officers' peremptory strike of the only remaining African-American venireperson, refused to give an adverse inference jury instruction for spoliation of evidence, admitted hospital records from the night of the incident, and excluded emails sent by an officer not sued. The jury found for the officers. Davis appeals the pretrial rulings. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Between 3:00 and 4:00 am on September 20, 2009, Davis was arrested for driving while intoxicated and taken to the Ferguson jail. An altercation occurred as he was being taken to a cell. Additional officers arrived as backup.

Davis claimed Officer Michael White pushed him into the cell and slammed him against the back wall. After complying with instructions to lie down and put his hands behind his back, he was handcuffed and beaten.

According to the officers, Davis was aggressive and resisted. White tried to control the situation, using surprise, by pushing Davis into the cell. Davis grabbed White, punched him in the face, broke his nose, then held on as White pushed him against the back wall of the cell, yelling at Davis to let go and using defensive strikes. Davis and White fell to the ground, along with Officer John J. Beaird, on top of Officer Kim R. Tihen. Tihen hit Davis on the back of his head with her handcuffs from the bottom of the pile. The officers eventually placed Davis in handcuffs.

_____

[2]The Honorable Nanette A. Baker, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c)(3).

Davis suffered a concussion and scalp laceration. When the EMTs arrived, Davis was uncooperative and belligerent toward them, so they could not thoroughly assess him. Davis was taken to a hospital for treatment. He refused to be treated until hospital staff took photos of his injuries. According to Beaird, Davis continued to be belligerent toward the hospital staff, "cussing and screaming" at them and refusing treatment. He returned to the Ferguson jail without being treated.

The cells at the jail are under video surveillance. In September 2009 the system used video tapes to record each 24-hour period starting at 7:00 am. The tapes were marked with the day the recording began. Because the incident occurred before 7:00 am, it was on the tape marked "9/19/09" rather than the one marked "9/20/09." When the officer in charge of the video system, Sergeant William J. Mudd, was told to preserve the recording of the incident, he preserved only the tape marked "9/20/09," so the tape containing video of the incident was not preserved and most likely was recorded over. Mudd testified it did not occur to him to preserve the September 19 tape in order to get the video from the early morning of September 20.

During jury selection, the officers used a peremptory strike on the only remaining African-American venireperson. Davis made a *Batson* challenge, which the district court denied.

At trial, the court admitted hospital records over Davis's objections. The district court also excluded racist emails sent and received by Mudd, which Davis offered as proof of Mudd's bias against African-Americans.

Davis moved to sanction the officers for spoliation of evidence, requesting an adverse inference instruction based on the failure to preserve the correct tapes. The district court denied the request.

-3-

The jury returned a verdict for the officers. Davis appeals the district court's ruling on his *Batson* challenge, the admission of the hospital records, the exclusion of Mudd's emails, and the denial of an adverse inference instruction.

## II.

This court reviews a *Batson* challenge ruling for clear error, deferring to the trial court's ruling "in the absence of exceptional circumstances." ***Kahle v. Leonard***, 563 F.3d 736, 739 (8th Cir. 2009), *quoting **Snyder v. Louisiana***, 552 U.S. 472, 477 (2008). A *Batson* challenge is evaluated in three steps:

> First, the [challenger] must make a prima facie case that the [ ] strike was motivated by race; second, the [striking party] must offer a race-neutral reason for the strike; and third, taking into account all the evidence, the trial court must find whether or not the [striking party] was motivated by purposeful discrimination.

***Id.*** "[T]he ultimate burden of persuasion . . . rests with" the challenger. *See **Rice v. Collins***, 546 U.S. 333, 338 (2006) (internal quotation marks omitted).

The third step "involves an evaluation of the [striking party]'s credibility, and the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." ***Snyder***, 552 U.S. at 477 (internal quotation marks and alterations omitted). The trial court plays a pivotal role in determining the credibility and demeanor of the striking party, which are "peculiarly within a trial judge's province." ***Id.*** (internal quotation marks omitted).

Davis challenged the officers' strike of the only remaining African-American venireperson. He made a prima facie showing that this strike was racially motivated because he is African-American and all of the officers are Caucasian. The officers offered a race-neutral rationale that the district court found credible: the venireperson

worked as a security officer in a nursing home and the officers' attorney stated that he was concerned "she would confuse or compare her use of force with the use of force that's appropriate in this case." Attempting to overcome this explanation, Davis argues that the officers' attorney questioned the African-American venireperson differently from other venirepersons with law enforcement or security experience and that officers generally want jurors with law enforcement experience—both demonstrating the stated race-neutral reason was pretextual.

The district court found the race-neutral explanation credible. This determination is "peculiarly within a trial judge's province." *Id.* (internal quotation marks omitted). The district court did not clearly err in finding that Davis failed to sustain his burden of persuasion.

## III.

The admission or exclusion of evidence is reviewed for abuse of discretion; evidentiary rulings are reversed only for "a clear and prejudicial abuse of discretion." *Quigley v. Winter*, 598 F.3d 938, 946 (8th Cir. 2010).

## A.

Davis argues that the hospital records were improperly admitted because they are improper character evidence and impermissible hearsay. He claims that evidence containing statements by hospital staff that Davis was belligerent and noncompliant was improper character evidence—submitted to show that because he acted that way at the hospital, he acted similarly when pushed into the cell. He also argues the statements are impermissible double hearsay because they are records of hospital staff recounting statements he made.

Similar evidence—that Davis was belligerent and did not cooperate with medical treatment—was admitted at trial through Beaird's testimony and EMT records. Although Davis states that "[t]he improper material . . . was extremely prejudicial to [Davis] and affected the jury's verdict," he offers no explanation why this particular account of his behavior was prejudicial in light of the other similar, cumulative, evidence.

Where evidence does not have a substantial influence on the verdict because it is cumulative, there is no prejudice. *See **McDowell v. Blankenship***, 759 F.3d 847, 852 (8th Cir. 2014). "Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." ***Wilson v. City of Des Moines***, 442 F.3d 637, 644 (8th Cir. 2006). "[I]n the context of the whole trial, the admission of" the hospital records "did not have a substantial influence on the verdict," and any error by the district court in admitting them was harmless. *See **McDowell***, 759 F.3d at 853 (internal quotation marks omitted).

B.

Federal Rule of Evidence 403 allows a district court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." This court "give[s] great deference to the district court's Rule 403 determinations" and "will not substitute its judgment for the judgment of the district court" absent an abuse of discretion. ***United States v. Battle***, 774 F.3d 504, 512-14 (8th Cir. 2014).

Davis argues the district court erred in excluding evidence of racist emails sent and received by Mudd. The district court addressed the relevance and risk of prejudice posed by admitting the emails. It questioned their relevance because Mudd was not present for the alleged use of excessive force—his only involvement was the

failure to preserve the video recording of the altercation after the fact. Though Mudd's bias might be relevant to the credibility of his excuse for not preserving the correct video, the district court noted that the excessive force, not the retention of potential evidence, was the central trial issue. The district court also determined that the evidence would be unfairly prejudicial, and that even a limiting instruction would be ineffective. Given the minimal probative value of Mudd's bias and the potential unfair prejudice to the defendant officers—who were not associated with the emails—the district court did not abuse its discretion in excluding the emails.

IV.

A district court's "decision on whether to impose sanctions," and its "decision to give a particular instruction" are reviewed for abuse of discretion. *Acciona Windpower N. Am., LLC v. City of W. Branch, Iowa*, 847 F.3d 963, 969 (8th Cir. 2017); *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015).

An adverse inference instruction for spoliation of evidence requires "a finding of intentional destruction indicating a desire to suppress the truth." *Burris*, 787 F.3d at 879. This is a high bar because "[a]n adverse inference instruction is a powerful tool"; it "brands one party as a bad actor" and "necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900 (8th Cir. 2004). The district court "has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Id.* at 901.

Davis argues:

Despite receiving a written request from Sergeant Ballard and a verbal request from Officer Beaird to preserve the September 20, 2009 video

from the jail surveillance cameras, it is inconceivable that Sergeant Mudd, who was the Communications Supervisor, would only preserve the video tape that started at 7:00 a.m. on September 20, 2009. Sergeant Mudd completely failed to preserve 7 of the 24 hours of September 20, 2009. This can be no mistake.

The district court heard testimony from Mudd about his failure to preserve the correct tape. It found credible his testimony that "[i]t never crossed my mind to save the earlier tape." The district court determined that the failure to preserve the proper tape was a negligent, not malicious, error. The district court's refusal to sanction the officers with an adverse inference instruction was not an abuse of discretion.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____