# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20600

United States Court of Appeals
Fifth Circuit

**FILED**
January 11, 2019

Lyle W. Cayce
Clerk

CHELSEA SWEARINGEN,

      Plaintiff - Appellant

v.

GILLAR HOME HEALTH CARE, L.P.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-798

Before JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

A nurse sued her former employer under the Rehabilitation Act of 1973. At trial, the district court permitted the employer's counsel to read to jurors the deposition testimony of a key witness. Jurors found that the employer was not liable. The nurse appeals, arguing the district court abused its discretion in allowing the reading of the deposition instead of requiring the witness to testify in person. We agree. We REVERSE and REMAND for a new trial.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20600

## FACTUAL AND PROCEDURAL BACKGROUND

Chelsea Swearingen, a nurse, sued her former employer, Gillar Home Health Care, L.P., alleging it failed to make reasonable accommodation for her pregnancy-related disability and wrongfully terminated her in violation of the Rehabilitation Act of 1973.[1]

The parties agree that, at trial, liability turned on whether Swearingen sent Evelyn Zapalac, the supervisor who fired her, a doctor's note to corroborate a medical-related absence or if Swearingen instead simply failed to report for work.

At some point during the litigation, Zapalac stopped working for Gillar, then later ceased communicating with Gillar's counsel after being shown text messages that contradicted her earlier representations. Gillar subpoenaed Zapalac for a deposition, and counsel for both parties questioned her.

One week after the deposition and two months before the trial, Gillar filed a motion to be permitted to use Zapalac's deposition at trial. Gillar relied on Federal Rule of Civil Procedure 32(a)(4)(E), which allows a deposition to be used when "exceptional circumstances make it desirable" to do so. Over Swearingen's objection, the district court granted the motion without articulating its reasoning. The court did specify, though, that the order "shall not be construed such that it prevents Plaintiff from subpoenaing" Zapalac for cross-examination. At trial, a significant portion of the deposition transcript was read to the jury.[2]

The jury returned a defense verdict, finding Gillar did not wrongfully terminate or fail to accommodate Swearingen. The district court entered

---

[1] The district court granted Gillar's motion for a directed verdict on claims brought under the Americans with Disability Act and Title VII. Those rulings are not at issue in this appeal.

[2] The reading of Zapalac's deposition occupies 82 pages of the trial transcript, which was about one fourth of the transcript of all the testimony heard by the jury.

No. 17-20600

judgment on the verdict and denied Swearingen's motion for a new trial. Swearingen timely appealed.

## DISCUSSION

"This court reviews evidentiary rulings for abuse of discretion." *U.S. Bank Nat'l. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014). A legal error or an assessment of evidence that is clearly erroneous constitutes an abuse of discretion. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). Yet even when the district court abused its discretion, reversal is not warranted unless the error affected the substantial rights of the relevant party. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 202 (5th Cir. 2016).

I.  *Abuse of Discretion in Allowing Reading of the Deposition*

The issue here concerns the presentation to jurors of significant testimony. That testimony must be presented by the witness "in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." FED. R. CIV. P. 43(a).

One such exception is found in Rule 32(a)(4), "which lists circumstances under which a declarant is [un]available and a deposition may be used at trial." *Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 552 (5th Cir. 1989). The circumstances relevant here are when the witness is more than 100 miles from the place for the trial and, in more general terms, when there are "exceptional circumstances" that, "in the interest of justice and with due regard to the importance of live testimony in open court," justify the use of the deposition. FED. R. CIV. P. 32(a)(4). The party who wishes to use the deposition has the burden of showing the unavailability of the witness. *Jauch v. Corley*, 830 F.2d 47, 50 (5th Cir. 1987).

Gillar argued that Zapalac's deposition testimony should be admitted because that witness lived 95.5 miles from the courthouse, which was close

3

enough to the Rule's requirement of 100 miles. Further, the fact the witness would "miss work and travel a lengthy distance" posed an undue burden. Gillar also relied on Zapalac's status as a former employee "not within [its] control" as support for its position.

We see little relevance on this question to the fact a witness would miss work, as that is all but inevitable, though unfortunate, for witnesses who are employed. Further, a witness's not being within the control of the parties is hardly unique. The remaining reason, namely, that the witness was almost 100 miles from the trial, needs to be a sufficient justification.

In deciding the issue, we first examine the stringency with which this particular set of requirements is applied. A "deposition is an acceptable substitute for oral testimony when in-court observation of the witness is extremely difficult or virtually impossible."[3] *Id.* at 50. The other specifically identified grounds for unavailability indicate the Rule does not take lightly the allowing of deposition testimony at trial. Those grounds include that the witness is dead, medically infirm, imprisoned, or not subject to a subpoena. *See* FED. R. CIV. P. 32(a)(4)(A), (C), & (D). One circuit summarized the conditions as prohibiting deposition testimony unless "live testimony from the deponent is impossible or highly impracticable." *McDowell v. Blankenship*, 759 F.3d 847, 851 (8th Cir. 2014). We consider that a fair summary.

Another consideration in this appeal is that the interests favoring live testimony are particularly compelling "when the deposition is presented to the jury in the form of a cold transcript," as it was in this case. *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000).

---

[3] *Jauch* discusses Rule 32(a)(3), but the Rule was renumbered as part of amendments in 2007 to the Rules; there were no substantive changes. *See Jauch*, 830 F.2d at 50 n.1 (quoting FED. R. CIV. P. 32(a)(3)); *compare* FED. R. CIV. P. 32(a)(4).

Gillar distinguishes *Jauch* by arguing that the witness there worked within one mile of the courthouse. *See Jauch*, 830 F.2d at 50. True enough, but the important fact is that the Rule sets a specific minimum distance. Neither the *Jauch* witness nor the one here satisfied it. The gist of Gillar's argument is that 95.5 miles is sufficiently close to 100 miles. Common sense suggests that to ignore the specific distance set by Congress could over time and multiple decisions erode that precise minimum and make it meaningless. The Rule does not use a modifier such as "about" or "approximately" or "around." Accepting the Rule to mean what it says, we reject that merely being close to 100 miles from the place of trial is ever close enough.

We do not see that it matters that the district court's order permitting the use of the deposition also observed that Swearingen "was free to subpoena [Zapalac] for cross-examination." The deposition made it clear that this witness would present testimony hostile to the plaintiff's case. It is hardly a proper tradeoff to say that the limitations on using depositions at trial can be relaxed because the party who objects can call the witness. A party should not be required "to subpoena a hostile witness." *Id.* at 49. Indeed, if calling the witness is meant to be the actual result of the ruling, then there was no reason to permit the deposition to be read to jurors in the first place. The witness can speak for herself as to all relevant evidence.

We conclude that the inconvenience of traveling any distance less than 100 miles, by itself, cannot render live testimony "extremely difficult or virtually impossible" to obtain. The district court's admission of Zapalac's deposition was an abuse of discretion and error.

## II.   *Effect on Substantial Rights*

Though we have found error, there is no need to reverse if this error was harmless. "An error does not affect substantial rights 'if the court is sure, after

reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict.'" *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) (quoting *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1094 (5th Cir. 1994)).

Since the parties agree liability was largely determined by whether Swearingen sent the doctor's note to Zapalac, both Swearingen and Zapalac were undeniably significant witnesses at trial. In *Jauch*, we reversed because the witness was "the only person" that had spoken with certain media outlets found to have reported defamatory statements, and therefore "the trial court's admission of the deposition . . . was so highly prejudicial that it constituted reversible error." *Jauch*, 830 F.2d at 50. Gillar argues Zapalac's testimony was not sufficiently unique, as other evidence could have caused jurors to disbelieve Swearingen. We examine the other evidence.

Swearingen wanted to prove she faxed the doctor's note. She introduced a fax confirmation that allegedly corroborated the claim. Swearingen also called two former co-workers as supporting witnesses. One testified she picked up the doctor's note off the fax machine and handed it to Zapalac. The other testified she spoke with Zapalac about Swearingen's inability to return to work until she saw a cardiologist.

The evidence Gillar relies upon as being duplicative of Zapalac's deposition testimony came from two witnesses. One witness simply said she had never seen the doctor's note and had no knowledge of anyone receiving it. While this witness did testify about the usual procedures followed for incoming faxes, she did not indicate that these procedures meant she would have known about the note if it existed. The second witness was the office receptionist. She testified that Zapalac never told her about the doctor's note. We do not see that this either contradicts Swearingen or corroborates Zapalac's account. Indeed, examining that witness's actual testimony eliminates its relevance:

when asked whether she was aware of the doctor's note, she responded, "No, ma'am, that's not my department."

Thus, the only person who testified to knowing Zapalac did not receive the doctor's note was Zapalac herself, making the deposition the only evidence that contradicted Swearingen's evidence on the central factual issue.

The admission of the deposition was not harmless.  The harm was especially acute because liability hinged on competing credibility determinations.  "Credibility determinations are sensitive matters." *Latiolais v. Whitley*, 93 F.3d 205, 209 (5th Cir. 1996).  Witness credibility "is not readily discernable by one who merely reads a cold record." *Pigrenet v. Boland Marine & Mfg. Co.*, 631 F.2d 1190, 1191 (5th Cir. 1980), *rev'd on other grounds on reh'g*, 656 F.2d 1091 (5th Cir. 1981).  "Only through live cross-examination can the jury fully appreciate the strength or weakness of the witness'[s] testimony, by closely observing the witness'[s] demeanor, expressions, and intonations." *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

We REVERSE the judgment and REMAND for a new trial.