**UNITED STATES of America, Appellee,**

v.

**Augustin JONES, M. D., Appellant.**

No. 77–1490.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1977.

Decided Feb. 16, 1978.

Charles Clifford Schwartz, Shaw, Howlett & Schwartz, Clayton, Mo., for appellant.

---

Frederick R. Buckles, Asst. U. S. Atty., argued, and Barry A. Short (former U. S. Atty.), St. Louis, Mo., on brief, for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Augustin Jones, a physician practicing in St. Louis, Missouri, appeals a conviction for intentionally distributing Quaalude, a Schedule II controlled substance,[1] in violation of 21 U.S.C. § 841(a)(1) (1970).[2] Dr. Jones was charged with two counts of prescribing Quaalude without a legitimate medical purpose and outside the usual course of professional practice: count I related to a prescription written by Dr. Jones on January 10, 1977, and count II related to a second prescription written on February 9, 1977. The jury acquitted Dr. Jones on count I but convicted him on count II. We reverse the conviction.

On this appeal, Dr. Jones contends that the district court erred in admitting evidence of alleged similar acts in prescribing Quaalude, and, in addition, Tuinal, Preludin, Desoxyn, and Dilaudid, other Schedule II drugs. Dr. Jones also contends that the prosecution did not produce sufficient expert medical evidence on which to base a conviction.

We hold that the district court erred in permitting the Government to introduce evidence concerning 478 prescriptions for Schedule II drugs, allegedly issued by Dr. Jones to his patients, as evidence of other crimes bearing upon Dr. Jones' knowledge and unlawful intent in prescribing drugs as charged in the indictment.

---

* TALBOT SMITH, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. A drug or other substance listed in Schedule II has "a high potential for abuse," has "a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions," and is a drug or substance the abuse of which "may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2) (1970). 21 C.F.R. § 1308.-12(e) (1977) provides that drugs containing

## I. The Evidence at Trial.

In order to place the admission of the contested evidence in appropriate context, we summarize the evidence introduced at the two-day trial. The indictment stemmed from the efforts of St. Louis policemen who, posing as patients, visited Dr. Jones in order to obtain prescriptions of Schedule II drugs, specifically Quaalude, a depressant, or Preludin, an amphetamine sometimes used for the purpose of facilitating weight loss. In late November or the early part of December 1976, officer Antone Wagner of the St. Louis Metropolitan Police Department, who worked as an undercover agent in the Narcotics Division, went to Dr. Jones' office. In the waiting room of the office he observed five other persons between the ages of twenty and thirty-five. Officer Wagner asked Dr. Jones for a prescription for Preludin, which Wagner indicated he needed for weight control. Dr. Jones asked Wagner for his reference, and Wagner responded with the name of Linda Couch. Stating that he did not recall Linda Couch, Dr. Jones declined to prescribe Preludin for Wagner.

On January 10, 1977, the St. Louis Police Department made a further effort to obtain Schedule II drugs from Dr. Jones. On that date, Larry Wells, a police officer on assignment to the Drug Enforcement Administration, went to Dr. Jones' office under the assumed name of Tony Ventimiglia and told the physician that one Ricky Feldman had said that he (Wells) could obtain a prescription for Quaalude from Dr. Jones. Officer Wells testified that Dr. Jones took some information from him and then gave

---

specified depressant substances are listed under Schedule II. No dispute exists that Quaalude is a depressant-type drug listed under Schedule II.

2. 21 U.S.C. § 841(a)(1) (1970) provides in pertinent part:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense * * * a controlled substance[.]

him a prescription for thirty Quaalude tablets. Wells paid ten dollars for this medical service and was told by Dr. Jones to try Gross Drugs in St. Louis if he had any trouble getting the prescription filled. In fact, Gross Drugs would not fill the prescription, but Wells obtained the medication from another pharmacy in St. Louis. Dr. Jones' version of the session, while substantially in accord with the testimony of officer Wells, added that Wells had stated that he worked on the production line at the Chrysler plant, that the work was tiring, and that he needed something for sleep. Count I of the indictment rests upon this January 10th incident. As we have already noted, the jury returned a not guilty verdict on this count.

Officer Wells returned to Dr. Jones' office on February 9, 1977.[3] He identified himself by his assumed name and was escorted by Dr. Jones into the latter's office. In the conversation that ensued, Dr. Jones commented on Wells' apparent Italian heritage. Wells mentioned that he had obtained the new job that he had mentioned during his previous office visit on January 10th. Dr. Jones wrote a prescription for thirty Quaalude tablets and gave the prescription to Wells; Wells again paid Dr. Jones ten dollars. Wells testified that he had not requested the prescription and that Dr. Jones did not make any inquiry into his medical history or make any kind of physical examination. Wells also told Dr. Jones that his wife had taken and benefited from some of the Quaalude tablets. Wells requested a prescription for his wife, but Dr. Jones refused, stating that she would have to come to the office for a prescription. Wells filled his prescription at King Pharmacy in St. Louis. These events formed the basis for count II of the indictment, on which the jury returned its guilty verdict.

In order to buttress its case against Dr. Jones, the prosecution introduced 478 prescriptions issued by Dr. Jones to patients over an approximate twenty-month period between August 9, 1975, and April 26, 1977. These prescriptions had been filled by Gross Drugs in St. Louis. An agent of the Drug Enforcement Agency also testified about prescriptions issued by Dr. Jones that had been filled at other St. Louis pharmacies. The agent indicated that in a three-month period from November 1976, through January 1977, Dr. Jones' prescriptions for Schedule II drugs accounted for forty-seven percent of Gross Drugs' total volume of Schedule II drug prescriptions.

An investigator for the Missouri Division of Health, Bureau of Narcotics, testified that he visited Dr. Jones in January of 1976 and warned Dr. Jones about prescribing large quantities of Schedule II drugs to certain types of people. The investigator declared that after their conversation Dr. Jones cancelled the rest of his appointments scheduled for that day.

The Government then called police officers associated with the Drug Enforcement Division of the St. Louis Police Department, who identified thirteen individuals named as patients on some of the 478 prescriptions written by Dr. Jones and filled at Gross Drugs. The police officers testified that all of these individuals have recognizable "track marks," which are scars or discolorations indicative of drug addiction, on their arms or hands, and that some were "slender." A pharmacist testified that in February of 1977 he had filled about a dozen prescriptions for Quaalude issued by Dr. Jones; he described the recipients as young people around twenty years of age.

The introduction of this evidence, over objection by the defendant Dr. Jones, placed Dr. Jones in a posture of having to explain not only a proper medical purpose for prescribing Quaalude for pseudo-patient officer Wells, but also his medical treatment for the thirteen individuals identified as probable drug addicts by police officers. In addition, Dr. Jones was required to attempt to rebut the suggestion of wrongful

---

**3.** On this occasion, officer Wells carried a concealed microphone that transmitted his conversation with Dr. Jones to a receiver-recorder operated by officer Wagner, who was stationed in an automobile outside. The Government introduced the taped record of the conversation into evidence. The recording was of poor quality and partly inaudible.

conduct in prescribing Schedule II narcotics for the scores of persons listed as patients in the 478 prescriptions seized by the prosecution and introduced in evidence. Indeed, the transcript of the trial establishes that most of the trial time, including examination and cross-examination of Dr. Jones, dwelt not on matters covered by the indictment but on Dr. Jones' conduct in issuing the 478 other prescriptions.

## II. *Other Crimes Evidence.*

■ Appellant argues that the trial court committed prejudicial error in admitting into evidence testimony relating to the 478 other prescriptions issued by Dr. Jones for Schedule II drugs and in permitting St. Louis police officers to identify several of the patients named in these prescriptions as known or recognizable drug addicts. The Government, citing *United States v. Calvert,* 523 F.2d 895 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976), and Federal Rule of Evidence 404(b),[4] argues that evidence of other crimes or similar acts is admissible to show intent, knowledge, plan, or absence of mistake when those matters are at issue in the trial.

That Dr. Jones issued a great number of prescriptions for Schedule II drugs demonstrates familiarity, *i. e.,* knowledge, concerning the usages of Quaalude. But the Government clearly did not introduce that evidence for such limited and proper purpose. By obtaining testimony from various police officers that some of the patients named in prescriptions for Schedule II drugs were narcotics addicts, the prosecution sought to imply that some, if not all, of these 478 prescriptions had been issued by Dr. Jones outside the legitimate and proper scope of medical practice. The prosecution did not introduce any evidence concerning the doctor-patient relationship existing with respect to these prescriptions, nor did it present other proof that the prescriptions

had not been issued for a proper medical purpose.

In *United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974), we said that evidence of alleged other crimes must be "clear and convincing." That case arose prior to the adoption of the Federal Rules of Evidence, which became effective on July 1, 1975. Subsequent to the adoption of the Federal Rules, in *United States v. Maestas,* 554 F.2d 834, 837 n. 2 (8th Cir. 1977), we commented that "evidence [of other crimes] which is vague and speculative is not competent proof and should not be admitted into evidence."

The other prescriptions of Schedule II drugs by Dr. Jones to his patients constituted crimes or unlawful acts similar to the crimes charged in the indictment only if Dr. Jones issued those prescriptions outside the bounds of professional medical practice. *United States v. Moore,* 423 U.S. 122, 124, 142, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). Absent any evidence bearing upon Dr. Jones' treatment of the patients in question, issuance of the prescriptions without more does not show that Dr. Jones acted unprofessionally in issuing these prescriptions. Therefore, the district court erred in admitting these prescriptions as evidence of other crimes, wrongs, or similar acts under Federal Rule of Evidence 404(b).

Moreover, the evidence, even though relevant for some purpose, should have been excluded under Federal Rule of Evidence 403, which reads as follows:

> *Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time*
>
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

---

4. Fed.R.Evid. 404(b) reads:

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

undue delay, waste of time, or needless presentation of cumulative evidence.

The evidence in question was relevant in part to establish the nature of Dr. Jones' practice and his knowledge of restrictions on prescribing Quaalude as a sleeping tablet. However, the Government sought to imply wrongdoing on the physician's part from the quantity of the prescriptions and the "quality" of some patients. The evidence lacked substantial probative force upon the issue of improper medical practice in the transactions charged, yet it could have led the jury to speculate that the quantity of prescriptions alone established wrongful conduct by Dr. Jones.

The trial transcript indicates that the Government spent more time in its case-in-chief dealing with alleged wrongful conduct not covered by the indictment than it spent dealing with the incidents for which Dr. Jones was charged. When Dr. Jones took the witness stand to present his defense, he was required to respond to some 478 instances of allegedly improper practice in issuing medical prescriptions, matters not set forth in the indictment, and was subject to vigorous cross-examination relating to these other claims of wrongdoing. This case calls for the application of the exclusionary principle of Rule 403, for the probative value of the evidence in question was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury.

### III. *Motion for Acquittal.*

■ Appellant urges as error the district court's failure to sustain a motion for acquittal. We do not know the grounds on which the motion was based, for the motion is not included in the record on appeal. We have only these two statements from appellant's brief to guide us:

> The Court committed prejudicial error in failing to sustain Defendant's Motion for Judgment of Acquittal at the Close of All the Evidence for the Government and at the Close of All the Evidence in the case for the reason that there was no expert witness testimony that the prescri-

pions [sic] issued by defendant were not for a legitimate medical purpose and not issued in the usual course of professional practice.

\*    \*    \*    \*    \*    \*

> Lastly, it needs to be said that the evidence is insufficient to convict the defendant because Dr. Burton merely testified, and remember he was an associate professor of Pharmacology at Washington University Medical School only, that, ". . . we teach our medical students that they must take a proper history and complete history, and they must do a physical examination and then prescribe the appropriate drug for the diagnosis they arrive." And in answer to the question, "Do you feel in any prescribing situation a proper history and physical should be taken?" He answered, "Yes, sir."

Appellant appears to be arguing either that the Government failed to establish a medical standard for prescribing Quaalude or that the Government, though establishing a medical standard, failed to prove by the testimony of medical experts that Dr. Jones did not comply with the standard.

We reject both of these arguments. The testimony of Dr. Robert Burton, called by the prosecution, as well as that of Dr. Charles Jost, called by appellant, substantially agreed that a physician should inquire as to a patient's general condition before prescribing Quaalude or other Schedule II drugs. Dr. Burton testified that before prescribing any drug, a physician must take a medical history and make some physical examination. Witness Burton possesses a Ph.D. in pharmacology. Although not an M.D., his twenty years of teaching at the Washington University Medical School qualifies him as an expert entitled to express an opinion as to medical procedures in prescribing drugs such as those listed under Schedule II. Thus, the Government adequately proved a medical standard. The question of whether Dr. Jones' procedures met that standard was for the jury to determine, not expert witnesses. *See United States v. Green,* 511 F.2d 1062, 1073 (7th

Cir.), *cert. denied,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975).

Thus, the trial judge did not err in denying the motion for acquittal on the narrow grounds asserted on appeal. Although our decision on appeal does not require a dismissal of the conviction on count II against Dr. Jones, from our review of the record, we believe that this court's comment in *United States v. Garvin,* 565 F.2d 519, 523 (8th Cir. 1977), apropos:

We view the evidence of record in this case as extremely marginal. However, * * * we find nothing to preclude a retrial if the Government chooses that course * * *.

Reversed and remanded.