# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1140

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Markeith King

*Defendant - Appellant*

_____

No. 17-1976

_____

United States of America

*Plaintiff - Appellee*

v.

Kristen L. Raines, (originally named Kristin L. Raines)

*Defendant - Appellant*

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 13, 2018
Filed: August 2, 2018
_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

This consolidated appeal arises out of the operation of a "pill mill" conducted under the guise of a legitimate clinic. Anthony Markeith King and Kristen L. Raines were charged in a conspiracy to distribute scheduled controlled substances without an effective prescription in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(E), and 846. Raines was also charged with two counts of distribution of a scheduled controlled substance without an effective prescription, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(E).

King pled guilty to the conspiracy charge. The district court[1] put King at a base offense level of 26, then added a four-point enhancement for acting as an organizer or leader and subtracted two points for acceptance of responsibility. King then had an offense level of 28, criminal history category I, with a Guidelines range of 78-97 months. The court sentenced King to 120 months' imprisonment, varying upward due to the nature of King's role in the conspiracy.

Raines proceeded to trial and was convicted on the conspiracy charge and acquitted on the distribution charges. The district court found Raines to be at offense level 26 (after applying a two-point enhancement for abuse of position of trust),

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

-2-

criminal history category I, with a Guidelines range of 63-78 months.  The court sentenced Raines to 70 months' imprisonment.

Raines appeals her conviction and sentence, claiming: 1) the court improperly admitted evidence at trial, 2) the court erred in instructing the jury, 3) the evidence was insufficient to sustain a conviction, and 4) her sentence is substantively unreasonable.  King challenges the reasonability of his sentence.  We affirm the district court in all respects.

## I.     Background

Artex Medical Clinic opened in Little Rock, Arkansas, in June of 2014. Patients at Artex frequently received prescriptions for hydrocodone and/or Xanax. Artex operated on a cash-fee basis, where patients would pay $200 in cash prior to being evaluated.  Anthony King worked as a "recruiter" for the clinic.  King recruited patients from across Arkansas to the clinic.  Patients were required to sign a "pain contract" in which they agreed to opioid treatment before they were seen or diagnosed by medical staff.

Kristen Raines began working as an Advanced Practice Registered Nurse for Artex in July of 2014.  From nearly the time she was hired until the clinic closed in September of 2014, Raines was the only employee of Artex present on a daily basis who was licensed to write prescriptions for hydrocodone and Xanax.

The Drug Enforcement Administration announced that drugs containing hydrocodone would become Schedule II drugs on October 6, 2014, which led to Artex closing its doors at the end of September.  Shortly after Artex closed, its operators (including King) opened KJ Medical Clinic.  Because of hydrocodone's new scheduling, Artex employed two doctors as prescribing physicians.  The new clinic operated similarly to the old clinic—patients would walk-in and pay either

$200 for a pain evaluation or $150 for treatment for a "cough." In early November of 2014, Raines began working at KJ.

The signs that KJ was not operating as a legitimate medical establishment were apparent. Receptionists at the clinic guided patients' answers on questionnaires to make them appropriate candidates for controlled substance prescriptions. Patients were instructed to fill their prescriptions only at particular pharmacies. Patients were required to sign forms attesting that they were not involved in any government investigation into the clinic. Patients were given an "entrance number" in the parking lot near the building and were only allowed inside in limited numbers. Upon entry plaintiffs were checked for weapons by an armed security guard.

The clinic's unorthodox methods extended to patient evaluations and the prescription of medications. Doctors at the clinic would pre-fill prescriptions for hydrocodone and Xanax. Nurses would then conduct in-person evaluations of the patients and complete the pre-filled prescriptions over the physician's signature.

Raines left KJ in early January of 2015. King continued recruiting patients until May of 2015, when the clinic was raided by the DEA. Following the raid, Raines and King were charged in a conspiracy to distribute controlled substances. Raines was also charged with two counts of distribution of a controlled substance without an effective prescription.

At trial the government presented evidence from cooperating co-conspirators, confidential informants, and an expert medical witness. Stella Green, a coworker nurse, testified that using pre-signed prescriptions was standard procedure for the clinic. Several other witnesses also testified that the clinic relied on pre-signed prescriptions.

The government introduced evidence from a confidential informant who visited the clinic in November of 2014, January of 2015, and March of 2015. Raines was working at the clinic during the time period of the first two visits, but not the third. The informant testified that on each visit prospective patients were told to take a number, get in line, and wait to receive a prescription. She described the atmosphere as chaotic, with patients arguing about who would get inside to fill their prescription. She testified that on her first visit when she handed her paperwork in and marked only a "5" on the pain scale, a desk clerk asked her to change her answer to a "10" or else she would be unable to see a doctor. The government introduced a video taken during the informant's third visit to the clinic. The informant testified that the contents of the video were similar in many ways to her experience during her first two trips to the clinic. A coworker testified that Raines would have walked through or seen the same areas that the video was taken in as an ordinary part of her workday.

A medical expert, Dr. Carlos Roman, testified regarding standards of practice in the field of pain management, guidelines for prescribing medications, and "red flags" that indicated potential painkiller abuse. Dr. Roman had twenty years of experience in the medical profession and had served on the Arkansas State Medical Board Review Committee since 2005, including as chairman. Dr. Roman also served as the Chief of Pain Management at St. Vincent Infirmary in Little Rock, Arkansas. Dr. Roman noted that the Artex "pain contract" and KJ's signed form prohibiting patients from participating in law enforcement activity were not typical for a legitimate medical establishment. He also testified regarding the Prescription Monitoring Program ("PMP") data offered by the United States as evidence of irregular prescription activity. The data was submitted to the trial court in a summary chart form showing hydrocodone and Xanax prescriptions allegedly written by Raines while working at Artex. The original versions of the prescriptions referenced in the chart were also submitted to the court. Of approximately 112 patient files from KJ, 21 contained paperwork signed by Raines, along with prescriptions bearing Raines's handwriting and a physician's signature.

Dr. Roman testified that he believed the records indicated a failure to pursue a legitimate medical purpose. He based his review on all of the files available from Artex, ten files chosen at random from KJ, and eleven files identified as relating to patients Raines treated at KJ. He noted that patients had consistently marked either a "9" or "10" on the pain scale. He further remarked that the patients' answers to anxiety and depression questionnaires were outside the normal boundary for treatment by a pain specialist and indicated suicidal tendencies. In particular, he noted that several of the files raised concerns that medical treatment had been limited to the prescription of opioids when the alleged circumstances would have required more detailed and thorough care. He also commented on an audio recording from an informant patient in which Raines referred to Xanax by the street term "bars." He noted that using street terms is not normal in medical practice.

During the jury instruction conference, Raines requested a "good faith" instruction, proposing the following language:

> When you consider the good faith defense, it is the defendant's belief that is important. It is the sincerity of the defendant's belief that determines if he or she acted in good faith. If the defendant's belief is unreasonable, you may consider that in determining his or her sincerity of belief, but an unreasonable belief sincerely held is good faith.

The trial judge declined to provide the instruction. The trial judge provided an instruction on willful blindness over Raines's objection.

Raines was convicted on the conspiracy charge and acquitted on the substantive distribution charges. At sentencing the district court found Raines responsible for 125,940 pills of hydrocodone and 151,076 pills of Xanax. The court also applied an enhancement for abuse of position of trust. Raines was sentenced to a term of 70 months' imprisonment to be followed by three years of supervised release.

The district court applied a sentence enhancement to King for being an organizer or leader and also applied a reduction for acceptance of responsibility. King was sentenced to a term of 120 months' imprisonment to be followed by three years of supervised release.

## II.     Discussion

### A.     Evidentiary Rulings

"Federal Rule of Evidence 403 allows a district court to exclude evidence 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" Davis v. White, 858 F.3d 1155, 1159 (8th Cir. 2017). We give great deference to the district court's Rule 403 determinations and will reverse its evidentiary rulings only for a "clear and prejudicial abuse of discretion." Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010). "[A] district court's discretion in determining the admissibility of evidence is 'particularly broad in a conspiracy trial.'" United States v. Darden, 70 F.3d 1507, 1539 (8th Cir. 1995) (quoting United States v. Willis, 997 F.2d 407, 414 (8th Cir. 1993)). Raines raises a series of objections to evidentiary decisions made by the district court.

### *1. The Prescription Monitoring Program Data Summaries*

Raines claims the PMP data is inadmissable because it is of questionable reliability and is unfairly prejudicial. The PMP data was corroborated by several other pieces of evidence, including cross-references to particular days on which Raines worked, patient sign-in logs for those days, and hard copies of the actual prescriptions offered to those patients. Those corroborating elements provided sufficient reliability

for the PMP summaries.[2]  Contrary to Raines's assertion, it was not unfairly prejudicial for the PMP summaries to include only those prescriptions for the particular substances alleged in the conspiracy.  The district court did not abuse its discretion by admitting the PMP evidence.[3]

## 2. Expert Physician Testimony

Raines objects to the admission of Dr. Roman's expert physician testimony on the grounds that it was based on both a lack of personal knowledge and an inadequate review of the prescription records.  Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony.  "We review a district court's decision to admit expert testimony for an abuse of discretion." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (citing United States v. Cawthorn, 429 F.3d 793, 799 (8th Cir. 2005)).  Rule 702 requires only that an expert "possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's

[2]Raines's reliance on United States v. Jones, 570 F.2d 765, 769 (8th Cir. 1978), is misplaced. In that case we held that specific prescriptions introduced into evidence but not addressed in the relevant indictment should have been barred on Rule 404(b) and 403 grounds. Here there is no Rule 404(b) problem, as the PMP summaries only contain prescriptions relating to the charged conspiracy. See United States v. Ali, 799 F.3d 1008, 1026 (8th Cir. 2015) (evidence is intrinsic in a conspiracy if it "completes the story or provides a total picture of the charged crime").  The summaries also do not pose the Rule 403 problems we identified in Jones, as they are accompanied by other evidence beyond mere quantity and do not include prescriptions relating to "other claims of wrongdoing." See 570 F.2d 765, 768-69.

[3]Raines's remaining objections to the PMP data were amply addressed via her ability to cross-examine witnesses regarding the construction of the PMP charts. See Watkins v. Sowders, 449 U.S. 341, 349 (1981) ("[U]nder our adversary system of justice, cross-examination has always been considered a most effective way to ascertain truth.").

understanding to any degree.'" Id. (quoting 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6265 (1997)); see also Polski v. Quigley Corp., 538 F.3d 836, 839 (8th Cir. 2008) (quoting Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001)) (explaining that district courts should apply three-part test to expert testimony by addressing relevancy, reliability, and the qualifications of the witness).

Here Dr. Roman's testimony regarding standards of medical care and the PMP data satisfied Rule 702's requirements. Dr. Roman was well qualified to testify concerning standards of practice in the field of pain management, including warning signs regarding abuse of pain medication or diversion of medication. And given Dr. Roman's "personal knowledge [and] experience," he was a reliable source of testimony on standards of medical care and the import of the PMP charts. See United States v. Holmes, 751 F.3d 846, 850 (8th Cir. 2014) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999)) (explaining that the "relevant reliability concerns may focus upon personal knowledge or experience"). While Dr. Roman acknowledged that he could not definitively state that any particular prescription was illegitimate absent more information, his opinion on the general operation of the clinic based on the accumulated evidence was still relevant. On the whole, Dr. Roman's opinion on the PMP charts "advance[d] the trier of fact's understanding" of the clinical practices at KJ and Artex and how they differed from ordinary medical facilities. The trial court did not abuse its discretion by admitting Dr. Roman's testimony.

### 3. Testimony from Clinic Coworker

Stella Green testified regarding her personal knowledge of the general practice of the clinic. As a fellow nurse, Green had direct knowledge of the clinic's general operating practices. While Green testified about her own observations and knowledge, it was circumstantial evidence of Raines's knowledge of or willful

blindness to the nature of the clinic. Defense counsel was given the opportunity to cross-examine Green regarding her personal knowledge (or lack thereof) of Raines's specific actions. That opportunity sufficiently ensured the reliability of the testimony. See United States v. Wilder, 597 F.3d 936, 944 (8th Cir. 2010) (explaining that the fact-finder is the final arbiter of witness credibility). Additionally, "[w]here evidence does not have a substantial influence on the verdict because it is cumulative, there is no prejudice." Davis, 858 F.3d at 1159. Green's testimony was corroborated by other evidence offered through the course of the trial, particularly that the clinic relied on pre-signed prescriptions. Admitting the testimony was not an abuse of discretion.

### 4. Videotape by an Informant

Raines claims that the district court abused its discretion by admitting a videotape of a visit by a confidential informant that took place while she was not employed by the clinic. The video was offered as circumstantial evidence of Raines's knowledge of or willful blindness to the nature of the clinic. While Raines did not work at the clinic at the time the video was taken, the informant who captured the video testified that the contents were similar to her prior visits to the clinic—which did occur while Raines was employed by the clinic. Other testimony corroborated that Raines would have viewed the same areas of the clinic shown on the video as part of her ordinary workday.

We need not decide whether admission of the video was error, as "improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." Id. (quoting Wilson v. City of Des Moines, 442 F.3d 637, 644 (8th Cir. 2006)). The scene depicted in the video was cumulative of and consistent with extensive testimony put before the jury regarding the day-to-day atmosphere at the clinic. If there is any error, it is harmless.

## B. Jury Instructions

"We review the district court's jury instructions for abuse of discretion," and "will affirm if the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Katz, 445 F.3d 1023, 1030 (8th Cir. 2006) (quoting United States v. Garcia-Gonon, 433 F.3d 587, 591 (8th Cir. 2006)). "A defendant is entitled to a specific jury instruction 'that conveys the substance of his request if his request is timely, it is supported by evidence in the case, and is a correct statement of the law.'" United States v. Cruz-Zuniga, 571 F.3d 721, 725 (8th Cir. 2009) (quoting United States v. Whitehead, 176 F.3d 1030, 1037 (8th Cir. 1999)). A defendant "is not entitled to a particularly-worded instruction when the instructions actually given by the trial court adequately and correctly cover the substance of the requested instruction." Id. (quoting United States v. Long, 977 F.2d 1262, 1272 (8th Cir. 1992)). "We review the district court's denial of a proposed jury instruction for abuse of discretion, reversing 'only if the district court's alleged erroneous failure to give a particular instruction was prejudicial.'" Id. (quoting Whitehead, 176 F.3d at 1037).

Raines argues that the district court should not have provided the jury with a willful blindness instruction. An instruction on willful blindness is especially appropriate "when the defendant denies any knowledge of a criminal scheme despite strong evidence to the contrary." United States v. Sigillito, 759 F.3d 913, 939 (8th Cir. 2014) (quoting United States v. Lewis, 557 F.3d 601, 613 (8th Cir. 2009)). Raines took the stand to protest that she lacked actual knowledge of the scheme. The evidence supports a theory that any lack of understanding of the nature of the clinic as a pill mill could only have been held by refusing to take note of the obvious. Including a willful blindness instruction was well within the district court's discretion.

Raines also claims the district court should have provided her proposed good faith instruction. The government bore the burden of establishing that Raines's actions were not for legitimate medical purposes in the usual course of medical practice. See United States v. Smith, 573 F.3d 639, 647-49 (8th Cir. 2009) (discussing meaning of "usual course of professional practice"). A medical professional's good faith may be relevant to a jury's determination of whether the doctor acted outside the bounds of medical practice or with a legitimate medical purpose when prescribing narcotics. See id. (discussing a good faith instruction in a case involving § 841).

Raines's good faith instruction was unwarranted here because it misstated the applicable law. Raines's instruction incorrectly suggested that the standard for appropriate medical practice was subjective, rather than objective. See id. at 648-49 (quoting United States v. Moore, 423 U.S. 122, 143 (1975)) (internal quotation marks omitted) (explaining that if "a subjective standard were to prevail, it would allow an individual [medical professional] to define the parameters of his or her practice and effectively shield the practitioner from criminal liability despite the fact that the practitioner may be acting as nothing more than a 'large-scale pusher'").

More importantly, the instructions as a whole described the specific intent necessary to commit the crime and cover the same ground the good faith instruction would cover. Under these circumstances there is no error. United States v. Brown, 478 F.3d 926, 928 (8th Cir. 2007). Here the jury instructions on conspiracy adequately set out the required elements of knowledge and intent. The district court did not abuse its discretion by refusing to provide a good faith instruction.

### C. Sufficiency of the Evidence

Raines challenges the sufficiency of the evidence presented at trial. We review "the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all

reasonable inferences that support the verdict." United States v. Tillman, 765 F.3d 831, 833 (8th Cir. 2014) (quoting United States v. Harris-Thompson, 751 F.3d 590, 598 (8th Cir. 2014)). "A defendant challenging the sufficiency of the evidence in a conspiracy case has a heavy burden." United States v. Mann, 701 F.3d 274, 296 (8th Cir. 2012) (quoting United States v. Mickelson, 378 F.3d 810, 821 (8th Cir. 2004)). "[I]n evaluating the sufficiency of evidence to sustain a verdict, circumstantial evidence must be treated no differently than direct evidence." United States v. Young, 753 F.3d 757, 783 (8th Cir. 2014) (citing United States v. Lam, 338 F.3d 868, 871 (8th Cir. 2003)). We will overturn the verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Colton, 742 F.3d 345, 348 (8th Cir. 2014) (quoting United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007)).

To convict Raines of conspiracy, the government needed to show that (i) two or more persons agreed to distribute controlled substances without an effective prescription, (ii) the defendant knew the agreement's purpose, and (iii) the defendant knowingly and voluntarily joined the agreement. See United States v. Hansen, 791 F.3d 863, 870-72 (8th Cir. 2015) (applying conspiracy elements to mail/wire fraud case). No explicit agreement is required; "a tacit or implicit understanding" is sufficient. United States v. Wells, 646 F.3d 1097, 1102 (8th Cir. 2011). Even a minor participatory role in the conspiracy will sustain a conviction once an underlying conspiracy has been established. See United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc). A jury verdict may be based "solely on the testimony of cooperating witnesses." Tillman, 765 F.3d at 834 (quoting United States v. Smith, 632 F.3d 1043, 1046 (8th Cir. 2011)). While the "government may not rely solely on the jury's disbelief of a defendant's denials to meet its burden of proof," when there is "other corroborative evidence of guilt, the jury can properly draw an inference of guilt from its disbelief of the defendant's denials." United States v. Reed, 297 F.3d 787, 789 (8th Cir. 2002) (quoting United States v. Davidson, 122 F.3d 531, 536 (8th Cir. 1997)). "[W]illful blindness may serve as the basis for knowledge

if, 'in light of certain obvious facts, reasonable inferences support a finding that a defendant's failure to investigate is equivalent to burying one's head in the sand.'" United States v. Chavez-Alvarez, 594 F.3d 1062, 1067 (8th Cir. 2010) (quoting United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004)) (internal quotation marks omitted).

The evidence in this case was overwhelming that Raines was involved in the conspiracy. The jury was presented with extensive evidence that Artex and KJ were not run as legitimate medical enterprises. Raines does not contest the existence of a conspiracy; rather, she claims the evidence was insufficient to prove she joined the conspiracy and had knowledge of its purpose. Raines continued to work at the clinic despite obvious signs that the clinic was a pill mill. Raines's decision to work at the clinic despite the clinic's obviously illegitimate nature is readily seen as a "tacit or implicit understanding" of her role in the scheme. Given the evidence, a reasonable jury could easily find Raines guilty beyond a reasonable doubt.

### D.    Sentencing Decisions

Raines and King raise a number of challenges to the district court's sentencing decisions. We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." United States v. Stone, 873 F.3d 648, 649 (8th Cir. 2017) (citing Gall v. United States, 552 U.S. 38, 41 (2007) . We "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." United States v. Smith, 573 F.3d 639, 658-59 (8th Cir. 2009) (quoting Gall, 552 U.S. at 50-51). If there is no procedural error, we review

-14-

the substantive reasonableness of the sentence. Id. (quoting United States v. Alvizo-Trujillo, 521 F.3d 1015, 1017 (8th Cir. 2008)).

*1. Drug Quantity Calculations*

Raines challenges the district court's drug quantity calculations. Drug quantity determinations "are factual findings, which we review for clear error, applying the preponderance-of-the-evidence standard." United States v. Walker, 688 F.3d 416, 420 (8th Cir. 2012) (citation omitted) (internal quotation marks omitted). The district court's factual determinations will stand "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Colton, 742 F.3d at 348 (quoting United States v. Miller, 511 F.3d 821, 823 (8th Cir. 2008)).

"[F]or purposes of calculating drug quantity in a drug conspiracy case, 'the district court may consider amounts from drug transactions in which the defendant was not directly involved if those dealings were part of the same course of conduct or scheme.'" Id. at 349 (citing United States v. Bradley, 643 F.3d 1121, 1126 (8th Cir. 2011)). This includes "all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." Id. (citing United States v. Plancarte-Vazquez, 450 F.3d 848, 852 (8th Cir. 2006)). "The court may make a specific numeric determination of quantity based on imprecise evidence . . . so long as the record reflects a basis for the court's decision." United States v. Roach, 164 F.3d 403, 413-14 (8th Cir. 1998).

The district court's drug quantity calculations included a number of pills directly attributable to Raines, as well as pills from other transactions by the pill mill. The record amply provides a basis for the district court's calculation. The jury found beyond a reasonable doubt that Raines had knowledge of the conspiracy. Given the

"pill mill" nature of the conspiracy, the drug quantities involved were reasonably foreseeable to Raines. The district court did not clearly err in making its drug quantity calculations.

## 2. The Abuse of Trust Enhancement

"To warrant an abuse-of-trust enhancement, the government must prove by a preponderance of the evidence that, '(1) defendant occupied a position of . . . trust, and (2) defendant used this position in a manner that significantly facilitated the commission or concealment of the offense.'" United States v. Walker, 818 F.3d 416, 423 (8th Cir. 2016) (quoting United States v. Miell, 661 F.3d 995, 998 (8th Cir. 2011)) (emphasis removed from original). "We review the legal component of the abuse of trust determination de novo and the district court's factual findings for clear error." Id. (quoting United States v. Anderson, 349 F.3d 568, 573 (8th Cir. 2003)).

The district court properly found that Raines's role as a medical professional meant she served in a position of trust. See United States v. Stella, 591 F.3d 23, 29 (1st Cir. 2009) (holding that registered nurse served in a position of public trust). And Raines's role as a medical professional "significantly facilitated" her ability to aid the conspiracy, which revolved around the illegitimate dispensing of drugs. The district court did not err in its determination.

## 3. Substantive Reasonableness of the Sentences

A sentencing court "abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Watson, 480 F.3d 1175, 1177 (8th Cir. 2007) (citing United States v. Haack, 403 F.3d 997, 1004 (8th Cir.

-16-

2005)). A sentence within the Guidelines range is presumptively reasonable. Id. (citing United States v. Lincoln, 413 F.3d 716, 718 (8th Cir. 2005)).

Raines's within-Guidelines sentence was substantively reasonable. The district court adequately explained its sentence, even noting that it was appropriate with or without the existence of the Guidelines in light of the quantity of drugs that Raines had helped enter her community. The district court's decision not to weigh mitigating factors as heavily as Raines "would have preferred does not justify reversal." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009).

King's sentence was also substantively reasonable. The district court articulated its opinion that King's role as a recruiter who connected users from across the state of Arkansas with the pill mill deserved a stronger sentence than that contemplated by the Guidelines. The court noted that the sentence was designed to address the needs of the particular offender, given King's daily violation of the law and the damage caused to the community. Under these circumstances, an upward variance of 23 months was not an abuse of discretion.

## III.  Conclusion

We affirm the judgments of the district court.

_____