NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0311n.06

Case No. 20-6297

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 18, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| RICHARD FARMER, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: GIBBONS, KETHLEDGE, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. A federal jury convicted former medical doctor Richard Farmer, of three counts of unlawfully distributing oxycodone. Farmer was sentenced to 48 months' imprisonment followed by three years of supervised release. He appeals his conviction and seeks a new trial, arguing that the district court erred when it failed to grant a continuance of the trial date to afford his expert time to examine additional prescriptions produced by the government days before trial. He also challenges the district court's admission of prescription data from two state-provided substances databases to support the government's contention that the prescriptions were made outside the scope of the practice of medicine. We affirm.

**I.**

Evidence presented during Farmer's trial established the following facts. Farmer practiced as a doctor of psychiatry licensed by the state of Tennessee. He operated a general psychiatry

practice from an office in Memphis, Tennessee. In November 2018, Agent Mark Wray, a task force officer with the Drug Enforcement Administration's Tactical Diversion Squad, visited Farmer's office to investigate reports of allegedly fraudulent prescriptions originating from Farmer's office. Law enforcement officers reviewed Farmer's office computer and found records of the prescriptions in question. Wray later interviewed Farmer who acknowledged writing prescriptions for several people, including as relevant here, individuals identified in the indictment as JT, MT, and TT. Because the strength of the evidence bears on our analysis of the district court's decision to admit the challenged prescription database evidence, we briefly detail the trial evidence relating to Farmer's counts of conviction below.

JT was a former patient of Farmer's. She first met Farmer sometime prior to 2014, when she was seeking treatment for opioid addiction. In or around 2016, JT began seeing Farmer again, but not as a patient. Rather, she would call Farmer and go to his office in the late afternoon or on Saturday when no one else was there. Farmer initially paid JT to clean his office. Later, Farmer began supplying JT with oxycodone and Xanax to feed her drug addiction in exchange for money and sexual acts. She testified that Farmer would write out prescriptions, sign them, and hand them to her.

MT is JT's sister-in-law. On her first visit with Farmer, MT received medication for depression as well as Xanax and oxycodone. She testified that she received the oxycodone because she had been having "pain problems" and Farmer had been supplying JT with the same drug. (R. 98, PageID 1557). Farmer did not identify any legitimate psychiatric purpose for prescribing oxycodone to MT. And he made only rudimentary notes in MT's patient file about her medical condition, indicating that he prescribed the oxycodone for endometriosis, even though that was not a condition a psychiatrist would typically treat. MT testified that she sent Farmer nude photos in

exchange for "[m]oney" and "help," and that "the whole relationship, pretty much, was about the prescriptions." (*Id.* at 1566–67). MT went to see Farmer almost daily. Farmer continued to write MT prescriptions for oxycodone, even after learning she was pregnant. MT saw Farmer and received money and drugs from him until early 2019.

TT is MT's sister and JT's sister-in-law. TT testified she was never a patient of Farmer's, and consistent with this fact, agents found no file for her at Farmer's office. Toward the end of 2014 or the beginning of 2015, TT started contacting Farmer to obtain prescriptions for Xanax and oxycodone. She went to Farmer's office in the evenings to receive the prescriptions and money. When Farmer was not in the office, he taped prescriptions to the door of his office or the trash can outside the office for TT to pick up. Like JT, TT also had sexual encounters with Farmer in exchange for money and prescriptions. This occurred approximately three times a month, until the middle of 2016. Throughout the time she saw Farmer, TT was addicted to heroin and Xanax.

On September 26, 2019, a federal grand jury in the Western District of Tennessee returned a superseding indictment charging Farmer with nine counts of unlawfully distributing and dispensing controlled substances and aiding and abetting, in violation of 21 U.S.C. § 841(a), (b)(1)(C), (b)(2) and 18 U.S.C. § 2. Farmer engaged a handwriting expert, Grant Sperry, to opine on whether Farmer's signature appeared on all of the unlawful prescriptions at issue. After Sperry had reviewed and evaluated almost 50 prescriptions which Farmer had received in discovery, the government produced a few dozen more in the days leading up to trial. Four days before trial was due to begin—the district court held a status conference at defense counsel's request to discuss whether Sperry would have sufficient time to review all of the prescriptions the government had provided. When the district court asked counsel for both sides whether they thought they "should just plow ahead and go," Farmer's counsel responded that he felt "ready to go forward" and stated

"[w]e can make it work for us." (R. 175, PageID 2539). The case proceeded to trial on February 10, 2020, as scheduled.

At trial, the government presented testimony from ten witnesses: JT, MT, TT, and two other individuals identified in the indictment who received prescriptions from Farmer; Lynn Ellis, a pharmacist in Memphis; Farmer's office manager; the property manager for Farmer's office building; Dr. James Kyser, who testified as an expert witness; and Agent Wray. The government offered evidence that it would not be within the scope of professional practice for a psychiatrist (1) to prescribe a patient opioids without keeping medical records of the patient's treatment; (2) to have a patient clean the office; or (3) to have a sexual relationship with a patient. Indeed, according to Dr. Kyser's testimony, it is "an absolute criteria" that psychiatrists "don't engage in intimate relationship[s] with [their] patients" and there is "never a justification" for doing so. (R. 96, PageID 1360). Dr. Kyser further testified that there are particular risks associated with prescribing opioids to a pregnant person because the baby could develop a dependency on the drugs.

The government also presented evidence that most psychiatrists do not prescribe opioids at all, and that there is no legitimate medical reason for a psychiatrist to prescribe opioids for long-term use. Farmer's office manager confirmed that Farmer did not typically prescribe oxycodone and that he did not prescribe opioids to patients on a long-term basis. Nonetheless, reports from the Tennessee Controlled Substance Monitoring Database ("CSMD") and the Mississippi Prescription Monitoring Program ("PMP")—which contain records of controlled substance prescriptions filled in those states—showed that JT, MT, and TT filled numerous prescriptions for oxycodone between 2016 to 2018, with Farmer as the prescribing doctor.[1]

---

[1] JT, MT, and TT all lived in Southaven, Mississippi, approximately a twenty-minute drive from Farmer's office in Memphis, and JT and MT filled prescriptions in both Tennessee and Mississippi.

At the conclusion of the government's case-in-chief, Farmer moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion. The jury convicted Farmer on Counts 1, 3, and 4 for unlawfully distributing oxycodone to MT, JT, and TT, respectively. The jury acquitted Farmer on Counts 2, 6, and 8, and the court declared a mistrial on Counts 5, 7, and 9 due to the jury's failure to reach a unanimous verdict. Farmer received a sentence of 48 months in prison, followed by three years of supervised release. Farmer timely appealed.

## II.

We review a district court's denial of a motion for a continuance for abuse of discretion. *United States v. Amawi*, 695 F.3d 457, 480 (6th Cir. 2012). Under that standard, the denial of a continuance "amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay." *Id.* (quoting *United States v. Warshak*, 631 F.3d 266, 298 (6th Cir. 2010)). Even then, a defendant cannot "demonstrate reversible error" unless he shows that the denial of a continuance "resulted in actual prejudice to his defense." *United States v. Garner*, 507 F.3d 399, 408 (6th Cir. 2007). Actual prejudice requires a showing that "the continuance 'would have made relevant witnesses available or added something to the defense.'" *Id.* (emphasis omitted) (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997)). Likewise, we review a district court's evidentiary rulings for abuse of discretion. *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). In making that determination, "[t]he district court's conclusions of law are reviewed de novo, while the court's factual determinations underpinning the legal conclusions are reviewed for clear error." *United States v. Randolph*, 794 F.3d 602, 613 (6th Cir. 2015).

**III.**

*Request for a Continuance.* Farmer argues a continuance would have allowed his handwriting expert to review signatures on additional prescriptions that the government produced a few days before trial was set to begin. As an initial matter, the government argues that Farmer never made such a motion and that even if his request could be construed as such, he later affirmatively waived it. We agree.

On February 6, 2020, the district court held a status conference at Farmer's request. Trial was set to begin on February 10, 2020. Farmer's counsel informed the court that the day before the status conference, he had received an additional 44 written prescriptions from the government. Farmer's counsel also indicated that on the same date, he received a call from the court clerk asking if he would be ready to go to trial. Farmer's counsel explained that he "wanted to go forward" and "we continue to prepare to go forward," but that on February 6, 2020, he received an email from Sperry in which he stated he would not have time to review the additional prescriptions because he was out of the country until the weekend and was scheduled for an upcoming trial in Mississippi. (R. 175, PageID 2530–31).

The district court and Farmer's counsel discussed Sperry's schedule and whether he would be able to review the additional prescriptions before testifying. After thoroughly discussing the issue with counsel, the district court explained that it was inclined to proceed with the trial as scheduled. And once it was established that Sperry would be testifying toward the end of the trial, Farmer's counsel indicated that he wanted to proceed with the trial as scheduled.

Waiver is the "intentional relinquishment or abandonment of a known right," *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)), which occurs when a party "makes 'a plain, explicit concession on the record,'" *United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016) (quoting *United States v. Mabee*, 765 F.3d 666, 673 (6th Cir. 2014)). Here, the status conference was on the record; Farmer's counsel had the opportunity to request a continuance but instead affirmatively agreed with the district court's decision to proceed with the February 10, 2020 trial date.

While the trial court apparently treated Farmer's counsel's request for a status conference as a motion to continue the trial date, Farmer's counsel seemingly abandoned it by stating that he was "ready to go forward" and would "make it work" in response to the district court's question of whether to proceed. (R. 175, PageID 2539). Later in the discussion, he affirmed his earlier position on the matter stating, "we feel the same as we felt when we were called by [the court clerk], that we were ready to go forward." (*Id.*). Under these circumstances, it is fair to conclude that Farmer waived any objection to moving forward with trial. *See United States v. Redmond*, 475 F. App'x 603, 612 (6th Cir. 2012) (finding defendant "waived his objection to being sentenced as scheduled" when "[d]efense counsel apparently agreed with the district court's recommended course" of proceeding with the sentencing as scheduled); *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) (stating that "[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course")).

*Admission of Prescription Data from Controlled Substances Databases.* Farmer also challenges the district court's admission of prescription data from the Tennessee CSMD and the Mississippi PMP because he contends that the data was unreliable. "Generally, a district court's

evidentiary rulings are reviewed for abuse of discretion." *United States v. Chalmers*, 554 F. App'x 440, 449 (6th Cir. 2014). But because Farmer failed to object to the admission of this evidence at trial, we review the district court's evidentiary ruling for plain error. *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015) (citing *Olano*, 507 U.S. at 731–32). "To establish plain error, a defendant must demonstrate: (1) error, (2) that was plain, and (3) that affects substantial rights." *United States v. Collins*, 799 F.3d 554, 574–75 (6th Cir. 2015) (quoting *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007)). An error is "plain" when it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). A plain error affects substantial rights when there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (internal quotation marks omitted) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Collins*, 799 F.3d at 575 (quoting *Johnson*, 488 F.3d at 697). Farmer's challenge meets none of these conditions.

To begin, the district court did not plainly err in admitting the CSMD and PMP reports into evidence. At trial, the government read a joint stipulation regarding the CSMD and PMP. The CSMD and PMP monitor the dispensing of controlled substances, including oxycodone, in Tennessee and Mississippi, and maintain records of controlled substance prescriptions. The stipulation explained how the two databases function and identified exhibits consisting of database reports.

The trial court may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed.

R. Evid. 403. This test "is strongly weighted toward admission," and "[d]istrict courts enjoy 'broad discretion' in making the prejudice determination." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018) (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004)). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014) (quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999)). These reports were probative of the charges against Farmer, and there was no danger of unfair prejudice or confusion given the other evidence introduced at trial. The CSMD and PMP reports admitted in this case showed that MT, JT, and TT filled oxycodone prescriptions written by Farmer on specific dates. Hence, the evidence was directly pertinent to the charges of unlawful distribution. Importantly, the reports also "provide[d] a context for the jury to evaluate the allegations." *United States v. Weinstock*, 153 F.3d 272, 278 (6th Cir. 1998) (holding district court did not abuse its discretion in mail fraud prosecution by admitting statistical data from Blue Cross that listed the procedures billed by defendant-physician). For instance, the government's expert explained that he would have expected to see more thorough notes in Farmer's patient file for MT based on the number of prescriptions in her CSMD report. The reports accordingly provided probative evidence on the questions of whether Farmer wrote particular oxycodone prescriptions and context for whether he wrote them outside the scope of his medical practice.

Farmer counters that the reports were unfairly prejudicial because they were unreliable and uncorroborated. "Under the Rule 403 balancing process, however, probative value and unfair prejudice are distinct elements in the inquiry." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). "[A]bsent a showing that the challenged evidence invites the jury to decide the case

on an improper basis, unrelated to the probative value of the evidence, it is not unfairly prejudicial under Rule 403." *Id.* To the extent Farmer contends the CSMD and PMP reports were unreliable and thus insufficient to prove he actually wrote the listed prescriptions, his contention goes solely to the weight of the evidence. Lack of reliability does not establish unfair prejudice. *See id.* (rejecting defendant's contention that he was unfairly prejudiced because testimony was insufficient to prove identity of transacted substance). Moreover, Farmer had the opportunity to argue to the jury that the reports were unreliable and should be given no weight. *See Weinstock*, 153 F.3d at 278. Farmer's counsel specifically cross-examined Dr. Kyser and Agent Wray about the reliability of the CSMD and PMP. And Farmer's counsel explored through cross-examination and argued extensively to the jury at closing that many of the prescriptions listed in the CSMD and PMP reports were forged. As such, the district court did not err by admitting prescription data from the Tennessee CSMD and Mississippi PMP.

Farmer's reliance on the non-binding decision in *United States v. Jones* is unpersuasive. 570 F.2d 765 (8th Cir. 1978). In *Jones*, the Eighth Circuit held that evidence of controlled substance prescriptions should have been excluded because the quantity of prescriptions—combined with the fact that certain patients were drug addicts—improperly implied wrongdoing on the part of the defendant-physician charged with unlawful distribution. *Id.* at 768–69. But unlike in *Jones*, the government in this case introduced other evidence that the prescriptions were not issued for legitimate medical purposes—including evidence of Farmer's improper relationships with the prescription recipients in question. Witness testimony established that Farmer wrote oxycodone prescriptions for JT, MT, and TT outside the scope of his psychiatry practice, often in exchange for sexual favors. *See United States v. Tran*, 609 F. App'x 295, 299 (6th Cir. 2015) (distinguishing *Jones* and holding district court did not err in admitting statistical

data of prescriptions where government produced evidence that the prescriptions had no "medical rationale"). Moreover, the government introduced evidence that corroborated the CSMD and PMP reports, including hard-copy paper prescriptions, the audit log in Farmer's office computer, and Farmer's own admission that he wrote prescriptions for JT, MT, and TT. *See United States v. King*, 898 F.3d 797, 805 (8th Cir. 2018) (finding PMP data was properly admitted and rejecting defendant's argument that it was more prejudicial than probative because "[t]he PMP data was corroborated by several other pieces of evidence").

Next, admitting the CSMD and PMP reports did not affect Farmer's substantial rights or seriously affect the fairness, integrity, or public reputation of the trial. *See Olano*, 507 U.S. at 732. The jury did not have to rely on the CSMD and PMP reports to convict Farmer. There was overwhelming, independent, credible evidence that Farmer unlawfully wrote oxycodone prescriptions for JT, MT, and TT during the charged time periods. JT, MT, and TT each testified on direct examination about receiving prescriptions from Farmer outside of a typical doctor-patient relationship and in exchange for sexual favors. And their patient files or in TT's case—lack of a patient file—to some degree corroborated their claims. Moreover, Farmer admitted writing some of the prescriptions. As such, there was no "reasonable probability that, but for the error, the outcome of the proceeding would have been different."[2] *Rosales-Mireles*, 585 U.S. at 134–35 (quoting *Molina-Martinez*, 578 U.S. at 194).

Accordingly, Farmer has not shown that the challenged evidence invited the jury to decide the case on an improper basis. If anything, the fact that the jury did not convict Farmer on all

---

[2] Although Farmer briefly mentions U.S. Probation's consideration of uncharged conduct in its presentence report, he does not challenge his sentence on appeal. That issue is therefore forfeited. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018); *see also United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016).

counts indicates that the jury carefully scrutinized the evidence and the specific prescriptions at issue, rather than automatically inferring wrongful conduct based on the reports.

**IV.**

For the reasons discussed, we affirm.